IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CARLA F. DUNLAP, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00238-O-BP |
| § | |
| CITY OF FORT WORTH, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Amended Motion for Summary Judgment (ECF No. 64), Brief in Support (ECF No. 65), and Appendix in Support (ECF No. 66) filed on March 13, 2019 by Defendant City of Fort Worth ("the City"); the Response (ECF No. 72) filed by Plaintiff Carla F. Dunlap ("Dunlap") on April 3, 2019; the City's Reply (ECF No. 74) filed on April 17, 2019; and Dunlap's Response (ECF No. 75) and Appendix in Support (ECF No. 76), which the Court construes as a Sur-Reply, filed on April 18, 2019.

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed C. O'Connor **GRANT** the City's Amended Motion for Summary Judgment (ECF No. 64). The undersigned further **RECOMMENDS** that Judge O'Connor **DENY as MOOT** the City's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (ECF No. 62).

**I.     FACTUAL BACKGROUND**

In this employment discrimination case, Dunlap sues the City following her termination as en employee in the Fort Worth Police Department. Dunlap's Amended Complaint (ECF No. 53) makes numerous allegations against the City and contains a lengthy description of grievances

and allegedly improper conduct leading up to her termination on October 1, 2015 and the January 21, 2016 hearing before an independent hearing examiner on her administrative appeal of the termination. A liberal construction of the Amended Complaint reveals allegations that Dunlap was wrongfully terminated, harassed and bullied, retaliated against by City employees, and discriminated against because of her race. (*Id.* at 3-4). She claims disability and age discrimination; claims which the undersigned construes as sounding under 42 U.S.C. § 1983 (West 2012); and pay discrimination. (*Id.* at 3-4, 8-9, 24). Finally, she sues the City for negligence, defamation, invasion of privacy, and violation of Chapter 37 of the Texas Penal Code. (ECF No. 47 at 4, 7-8, 24).

The City moves for summary judgment on each of Dunlap's claims, asserting that her employment discrimination and § 1983 claims are time-barred or otherwise fail as a matter of law, her state law tort claims likewise are barred by sovereign immunity or fail as a matter of law, and her claim for violation of Chapter 37 of the Texas Penal Code fails as a matter of law.

## II.  LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there is no genuine issue of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Accordingly, a party who bears the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [the party's] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

### B. *Pro Se* Standard

Particular to a *pro se* party, courts are to liberally construe the pleadings, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.*

3

*Gamble*, 429 U.S. 97, 106 (1976)). But "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### III.   ANALYSIS

#### A.  Dunlap's § 1983 Claims Fail as a Matter of Law.

Although Dunlap did not specifically plead a § 1983 claim, the undersigned liberally construes her claims for alleged violation of due process and infringement of her rights under the First Amendment as premised upon violations of 42 U.S.C. § 1983. *Johnson*, 999 F.2d at 100. Dunlap alleges that the City violated her due process rights at her termination appeal hearing because: (1) she was prohibited from asking questions and could only make statements; (2) "the hearing officer was paid to make false statements about [her] not providing any documentation to support her case;" and (3) she "believes that the City['s] attorneys got with Theotis' supervisor in the Code Enforcement Division and intentionally scheduled him for court so that he could not be a witness for the Plaintiff during the hearing process." (ECF No. 47 at 3). Dunlap further alleges that the City violated her "Freedom of Speech Rights" when her immediate supervisor demoted her based on hearsay. (ECF No. 66 at 281). The City argues that there is no genuine issue of material fact as to the timeliness of Dunlap's § 1983 claims, and alternatively, that they fail as a matter of law. (ECF No. 65 at 11-16).

*1. Dunlap's § 1983 Claims are Untimely.*

Congress did not specifically provide a limitations period for § 1983 suits. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *see also* 42 U.S.C. § 1983. In such cases, federal courts borrow the forum state's general personal injury limitations period. *Id.* In Texas, there is a two-year limitations period for personal injury claims. *Priotrowski*, 237 F.3d at 576. "Although Texas's two-year limitations period applies, federal law determines when a claim pursuant to § 1983 accrues." *Cox v. City of Fort Worth*, 762 F. Supp. 2d 926, 936 (N.D. Tex. 2010). "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that forms the basis of h[er] action." *Id.*

The events giving rise to Dunlap's due process claims took place at her termination appeal hearing, which Dunlap concedes occurred on January 21, 2016. (ECF No. 47 at 3; ECF No. 66 at 293). Based on this summary judgment evidence, Dunlap had until on or before January 21, 2018 to file suit against the City for claims arising from the hearing. However, she did not assert these claims until February 23, 2018 when she initially filed suit in state court. (ECF No. 1 at 11). Given this timeline, Dunlap's § 1983 challenge to her termination appeal hearing is untimely. She has not presented any summary judgment evidence to the contrary, and there is no genuine issue as to a material fact regarding the timeliness of these claims.

Dunlap's claim that the City violated her First Amendment right when she was demoted by her immediate supervisor based on hearsay is also untimely under § 1983. Dunlap claims that on October 20, 2014, her immediate supervisor demoted her based on hearsay from another City employee. (ECF No. 66 at 280). Thus, Dunlap had until on or before October 20, 2016 to file a claim under § 1983 regarding this incident. She did not file suit until February 23, 2018. (ECF No. 1 at 11). Dunlap fails to provide summary judgment evidence to show that there is a genuine

5

issue of material fact as to this claim. For this reason, Dunlap's § 1983 claim arising from the incident that occurred on October 20, 2014 is untimely.

> 2. *Even if Timely, Dunlap's Section 1983 Claims Fail as a Matter of Law.*

Dunlap complains about numerous instances when current or former City employees allegedly discriminated against her, offended her, or violated her rights. However, the City is not liable for the actions of its employees under § 1983 on a respondeat superior theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). For the City to be liable under § 1983, Dunlap must plead and prove that a policymaker instituted an official policy that was the moving force of her constitutional violation. *Shumpert v. City of Tupelo*, 905 F.3d 310 (5th Cir. 2018). The City asserts that Dunlap has failed to make this fundamental showing.

Dunlap has not presented any summary judgment evidence to prove that a policymaker for the City established an official policy or custom that was the moving force in any of the constitutional violations that she alleges. In the absence of such evidence, the City is entitled to summary judgment on Dunlap's § 1983 claims, even if they were not already statutorily barred.

> **B. The City is Entitled to Summary Judgment on Dunlap's Title VII, ADA, and ADEA Claims**.
>
> 1. *Title VII Claims*

After liberally construing Dunlap's pleadings, she alleges that she was wrongfully terminated by the City because of her race. (ECF No. 53 at 3). She asserts that other white and Hispanic employees committed similar or worse violations of the City's policies than she did, but were not terminated. (*Id.*). She further alleges that she endured workplace harassment when one of the City's employees, Donald Fulford, "verbal[ly] attack[ed]" her although she had done "absolutely nothing" to provoke him. (*Id.* at 7). Dunlap asserts that no matter what Mr. Fulford "did, management did absolutely nothing but protect him because he is white." (*Id.*). Dunlap also

asserts that a City employee named "Mary M.," who was from Guam, "harassed and called" another "black[] female employee named Shavonda[] a 'n*****.'" (*Id.* at 4). Dunlap alleges that "Mary M." harassed her by asking about her fairer complexion and commenting that Dunlap and Shavonda were "different" from one another. (*Id.* at 5). Dunlap alleges that despite her immediate supervisor being made aware of these racial epithets and inappropriate comments, the supervisor "did absolutely nothing to rectify the friction between the employees." (*Id.*).

Moreover, Dunlap alleges that she was retaliated against when she was demoted and terminated because she alerted her superiors of the mistreatment she endured from the City's employees. (*See id.* at 6, 9-10, 17-18, 20-24). Dunlap alleges that multiple city employees racially discriminated against her in violation of Title VII. (*Id.*). She alleges that she was not promoted to higher-paying positions because she "was denied interviews for multiple jobs she applied for so that a white person could promote into the position." (*Id.* at 24).

Finally, Dunlap appears to allege sex discrimination and sexual harassment claims against the City pursuant to Title VII. For instance, she alleges that Adriana Olivas, a City employee, made a sexual statement to Theotis, another City employee. (ECF No. 53 at 13). She further alleges that Kaylo Harrison, a City employee, told her "[s]ome women have to show their breast to get a position, but [that she] did not have to finagle [her] way to get [Dunlap's] position." (*Id.* at 14). Dunlap also claims that Sherry Noll, another City employee, underwent two sexual misconduct cases. (*Id.* at 14-15).

The City argues that Dunlap failed to exhaust her administrative remedies for her Title VII claims as they relate to allegations of sex discrimination and sexual harassment, that her racial discrimination and retaliation claims are statutorily barred, and that she has not offered competent summary judgment evidence in support of these claims. (ECF No. 65 at 23-30).

7

Alternatively, the City argues that Dunlap's Title VII claims fail as a matter of law. (*Id.* at 25-30).

Under Title VII, a plaintiff must "first exhaust [her] administrative remedies" before bringing such claims against a defendant. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)(1) (West 2012)). "Exhaustion occurs when [a] plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (quotations omitted). The filing of an EEOC charge "'is a precondition to filing suit in district court.'" *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (quoting *Taylor*, 296 F.3d at 379). Upon receiving a statutory notice of right to sue, a plaintiff has ninety days to file a civil action pursuant to her Title VII claims. 42 U.S.C. § 2000e-5(f)(1). The ninety-day limitations period is strictly construed against all litigants, and *pro se* litigants are not excused from abiding by the limitations period. *Taylor*, 296 F.3d at 379. *See also Washington v. City of Gulfport*, 351 F. App'x. 916, 917-18 (5th Cir. 2009) (affirming the grant of summary judgment against a *pro se* litigant who filed a Title VII action more than ninety days after receiving a statutory notice of right to sue from the Equal Employment Opportunity Commission ("EEOC")).

Here, the EEOC received Dunlap's Charge of Discrimination on November 24, 2015. (ECF No. 66 at 228). Under the "Discrimination Based On" section of the form, Dunlap checked the boxes for race and retaliation. (*Id.*). Specifically, she states that she "was discriminated against because of [her] [r]ace, [b]lack, in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliated against." (*Id.*). She elaborates that she "was subjected to discrimination in that [her] Manager . . . target[ed] Blacks and other minorities while White employees suffer[ed] no repercussions." (*Id.*). She further alleges that "White employees [were]

allowed to be disruptive in the work place by cursing out supervisors, and [were] allowed to keep their jobs." (*Id.*). She states further that "White employees [were] allowed to disrespect Black employees and [were] not disciplined." (*Id.*).

Because Dunlap's Charge of Discrimination solely focused on her racial discrimination and retaliation claims, the EEOC could not have reasonably expected her sex discrimination and sexual harassment claims to grow out of the former claims. *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 (N.D. Tex. 2011). The scope of her judicial complaint thus is limited to her racial discrimination and retaliation claims. *Id.* Dunlap has not offered any summary judgment evidence to the contrary, and there is no genuine issue of material fact as to whether she exhausted her administrative remedies regarding her sex discrimination and sexual harassment claims.

As for Dunlap's racial discrimination and retaliation claims, the EEOC dismissed her Charge of Discrimination and mailed her a statutory notice of right to sue on November 30, 2015. (*Id.* at 229). Dunlap did not sue the City based upon these claims until February 23, 2018 even though the notice of right to sue informed her that she had ninety days from the date of receipt in which to file suit. (*See* ECF No. 1 at 11; ECF No. 66 at 229). Dunlap has not created a genuine issue of material fact as to whether she timely filed suit against the City based upon her racial discrimination and retaliation claims. Thus, summary judgment should be granted in favor of the City with respect to these claims as they are statutorily barred.

Even if Dunlap exhausted her administrative remedies as to her Title VII claims and they were not statutorily barred, they still would fail as a matter of law. A plaintiff has the burden of proof in a Title VII case alleging discriminatory treatment. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). "First, the plaintiff has the burden of proving by the

preponderance of the evidence a prima facie case of discrimination." *Id.* at 252-53. "Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 253 (quotation omitted). "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified . . . but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.*

Regarding her sex discrimination claims, Dunlap has not offered summary judgment evidence to prove that she applied for an available position for which she was qualified and was rejected by the City because of her sex. (ECF No. 53 at 155-57). Dunlap merely discusses the alleged sexual misconduct of other employees. (*Id.* at 13-15). With respect to her sexual harassment claims, she lacks standing because she did not suffer a concrete and particularized injury that was a result of the City's actions. *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). Although Dunlap alleges that other employees were sexually harassed when she worked for the City, she never alleges or offers competent summary judgment evidence that she suffered from sexual harassment. (*See* ECF No. 53 at 13-15). Thus, Dunlap's sex discrimination and sexual harassment claims fail as a matter of law.

Regarding Dunlap's racial discrimination claim concerning the City's failure to promote her to a position for which she was qualified and its termination of her employment, she fails to offer summary judgment evidence that would raise a fact issue of race discrimination either

directly or by inference. The summary judgment evidence offered by the City proves that Dunlap was not promoted and terminated because of her past work-related disciplinary infractions, her inability to work with others in a professional manner, and customer complaints that were received by her immediate supervisors. (*Id.* at 34-109, 118-121, 148-49, 152-54, 165-66). Moreover, the summary judgment evidence shows that other City employees of her same race, in addition to others of a different sex, were also disciplined for violating City policies and procedures. (*Id.*). This evidence proves that Dunlap was not singled out by the City because of her race. Dunlap did not present competent summary judgment evidence that proves or gives rise to an inference of race discrimination, and the City's summary judgment evidence is so one-sided as to support a nondiscriminatory purpose for why Dunlap was not promoted and was terminated.

Lastly, to prevail on her Title VII retaliation claim, Dunlap needed to establish that: (1) she engaged in activity that Title VII protects; (2) she was subjected to an adverse employment action by her employer; and (3) a causal link exists between the protected activity and the adverse employment action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citation omitted). Summary judgment for the City is appropriate if Dunlap cannot support all three elements. *Id.* Here, the summary judgment evidence is clear that Dunlap did not provide a response to the City's interrogatory as to what protected activity she engaged in and how that activity is causally linked to her lack of promotion or termination. (ECF No. 66 at 274). Dunlap failed to offer summary judgment evidence to raise a fact issue on these elements. Because Dunlap cannot support all three elements of her Title VII retaliation claim, summary judgment for the City is appropriate.

*2. ADA Claim*

Dunlap alleges that the City "failed to reasonably accommodate [her] medical conditions on several occasions." (ECF No. 47 at 9). Dunlap alleges that the City "abused [its] power and took advantage of [her] when [her supervisors] decided to send her to the crime lab to assist . . . with catching up on drug restitution cases when they knew she had a job-related injury." (*Id.*). Dunlap further alleges that the City was made aware of her job-related injury when she "provided medical documentation stating what [her] limitations were" to her supervisors. (*Id.*). Nonetheless, Dunlap alleges that while working at the crime lab, she was "forced to go up and down 30 stairs for each trip taken to the jail" and that her "medical disabilities" were "never accommodated . . . even after several meetings and emails were sent to" her supervisors. (*Id.*).

The City argues that summary judgment should be granted in its favor because there is not a genuine dispute regarding whether Dunlap exhausted her administrative remedies with respect to her ADA claim. (ECF No. 65 at 16-18). Alternatively, the City argues that Dunlap's ADA claim fails as a matter of law. (*Id.* at 18-20).

> The ADA prohibits discrimination on the basis of a disability, and expressly defines such discrimination to include not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity.

*Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009) (citing 42 U.S.C. § 12112(b)(5)(A) (West 2013)).

Like a Title VII claim, a plaintiff must first exhaust her administrative remedies for an ADA claim. *Dao*, 96 F.3d at 789 (citing 42 U.S.C. § 2000e-5(e)(1) and holding that an ADA plaintiff must exhaust remedies in the same manner as a Title VII plaintiff). "Exhaustion occurs when [a] plaintiff files a timely charge with the EEOC and receives a statutory notice of right to

sue." As noted above, the EEOC received Dunlap's Charge of Discrimination on November 24, 2015. (ECF No. 66 at 228-29). Under the "Discrimination Based On" section, Dunlap checked the boxes for race and retaliation. (*Id.* at 228). Throughout the Charge's "personal harm" and "discrimination statement" sections, she never stated that the City discriminated against her because of her alleged disability. (*Id.*).

Based upon Dunlap's Charge of Discrimination, her claims against the City are based solely upon alleged racial discrimination and retaliation. The scope of her judicial complaint thus is limited to her racial discrimination and retaliation claims. *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 (N.D. Tex. 2011). The EEOC could not have reasonably expected for Dunlap's ADA claim to grow out of her racial discrimination and retaliation claims. *Id.* Dunlap has not offered any summary judgment evidence to the contrary and thus, there is no genuine issue of material fact as to whether she exhausted her administrative remedies for her ADA claim.

Even if Dunlap properly alleged an ADA claim in her Charge of Discrimination and exhausted her administrative remedies as to that claim, it still would fail as a matter of law. The EEOC issued its statutory notice of right to sue to Dunlap on November 30, 2015. (ECF No. 66 at 228-29). Dunlap would have been required to file her ADA claim within the ninety-day period provided by law. 42 U.S.C. § 2000e-5(f)(1) (specifying that a Title VII action must be brought within ninety days of the claimant's notification of his right to sue); *see also id.* at § 12117(a) (incorporating the Title VII limitations period to ADA claims). Because she did not file this case until February 23, 2018, the filing of her ADA claim would have fallen outside of the statutory period. (ECF No. 1 at 11). Thus, her ADA claim fails as a matter of law because it was untimely.

### 3. ADEA Claim

Dunlap alleges that the "City terminated [her] because they knew it would be harder for her to be hired due to being over 40." (ECF No. 47 at 24). Liberally construed, the Court determines that Dunlap asserts an age discrimination claim against the City. (*Id.*). An age discrimination claim arises under the Age Discrimination in Employment Act of 1967 ("ADEA"). The City argues that summary judgment should be granted in its favor because Dunlap was required to exhaust her administrative remedies pursuant to the ADEA and failed to do so. (ECF No. 65 at 21).

As with Title VII and ADA claims, a plaintiff cannot pursue an ADEA claim unless she first exhausts "her available administrative remedies by filing a charge with the EEOC." *King*, 809 F. Supp. 2d at 579. Thus, for a plaintiff to file suit against her previous employer for an age discrimination claim, such claim had to be raised in her Charge of Discrimination with the EEOC. (*Id.*). Here, on Dunlap's Charge of Discrimination, she did not indicate that she claimed age-based discrimination. (ECF No. 66 at 228). Given Dunlap's Charge of Discrimination, her discrimination claims against the City are based solely upon race and retaliation, and the EEOC could not reasonably have expected Dunlap's age discrimination claim to grow out of her racial discrimination and retaliation claims.

Dunlap does not dispute these facts and has not produced any summary judgment evidence to support her claim under the ADEA. There is no genuine issue of material fact as to whether she exhausted her administrative remedies regarding her age discrimination claim.

### C. Summary Judgment Should be granted in Favor of the City on Dunlap's Tort Claims because They Fail as a Matter of Law.

Dunlap seeks "$250,000.00 each for her job-related injuries in which the City failed to make her aware of the law – no rules were made available during meeting with the ADA

Coordinator (Penny Fletcher) neither was the information made available in the City of Fort Worth Rules and Regulations Manual." (*Id.* at 24). The undersigned liberally construes this allegation as a negligence claim. *Johnson*, 999 F.2d at 100.

Dunlap further alleges that she was defamed when her "managers and supervisor intentionally targeted [her] through written reprimands so that she could not transfer to other City departments." (ECF No. 47 at 4,7). She alleges that "[t]hey ruined [her] reputation internally so that no other supervisor would allow [her] to transfer due to the reprimands." (*Id.* at 7). Dunlap alleges that she became aware that she was defamed during a payroll training session on September 3, 2014. (*Id.*). She alleges that "[t]he sergeant in charge of the payroll team begin yelling at [her] for no apparent reason other than what had been stated to him by the managers of the identification unit." (*Id.* at 8). Dunlap claims that prior to this encounter with the payroll sergeant, "[s]he had not spoken with him, other than via emails since 2013, when he entered the office with [her] timesheet that needed correcting." (*Id.*). As additional support for her defamation claim, Dunlap alleges that she was "accused . . . of impeding the identities of arrestees" and of "missing a non-mandatory training class" that she committed to attend outside of her work with the City. (*Id.* at 3-4).

Dunlap concludes with an invasion of privacy claim, alleging that the City illegally recorded her phone conversations and posted her photos on the internet without her permission. (*Id.* at 24). With respect to Dunlap's tort claims, the City responds that they fail as a matter of law because the City enjoys immunity that it has not waived. (ECF No. 65 at 30-32). Moreover, the City argues that her tort claims do not fall under one of the exceptions that would permit her to sue the City. (*Id.*).

For the State of Texas, its agencies and political subdivisions—including the City—to be sued for negligence or intentional torts, the governmental unit must consent to the suit by waiving immunity to tort liability. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). The Texas Tort Claims Act provides a limited waiver of immunity, subject to specific damage caps, for property damage, personal injury, and death claims arising from the "use or operation of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property." Tex. Civ. Prac. & Rems Code Ann. § 101.021 (West 2018).

Here, Dunlap has not offered summary judgment evidence to show that the City waived immunity with respect to tort liability. Her tort claims of negligence, defamation, and invasion of privacy do not arise from the "use or operation of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property." *Id.* Consequently, her tort claims cannot survive the City's Amended Motion for Summary Judgment, and she has not offered summary judgment evidence to raise a fact issue for trial.

### D.  No Private Right of Action for Criminal Violations

"Courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action." *Back v. UTMB*, No. 6:15-CV-129, 2016 WL 9455135, at *2 (W.D. Tex. Apr. 7, 2016); *see Williams v. Cintas Corp.*, No. 3:07-CV-0561-M, 2007 WL 1295802 (N.D. Tex. Apr. 10, 2007), *report and recommendation adopted*, No. 3:07-CV-0561-M, 2007 WL 1300780 (N.D. Tex. May 2, 2007); *see also Fields v. Nelms*, No. 3:15-CV-0879-P, 2015 WL 3407955 (N.D. Tex. May 27, 2015), appeal dismissed (Aug. 24, 2015). Thus, Dunlap's claim against the City for falsifying government documents in violation of Chapter 37 of the Texas

Penal Code fails to state a violation of a federal right and is not legally cognizable. *Back*, 2016 WL 9455135 at *2. Accordingly, the City is entitled to Summary Judgment on this claim.

### E. The City's Pending Motion to Dismiss Should be Denied as Moot.

Given the undersigned's recommendation that Judge O'Connor grant the City's Amended Motion for Summary Judgment (ECF No. 65), the City's second Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (ECF No. 62) should be denied as moot.

## IV. CONCLUSION

Summary judgment should be granted in favor of the City on Dunlap's claims under section 1983 because they are untimely and fail as a matter of law. Likewise, her claims under Title VII, the ADA, and the ADEA fail because she did not exhaust her administrative remedies and, even if she had, there is no genuine issue of material fact for trial under those statutes. Her tort claims fail as a matter of law, and her claim that the City committed a criminal violation of Chapter 37 of the Texas Penal Code is not cognizable.

## RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that United States District Judge Reed C. O'Connor **GRANT** the City's Amended Motion for Summary Judgment (ECF No. 64) and **DENY as MOOT** the City's second Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (ECF No. 62).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made,

state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      Signed **July 25**, **2019**.

                                              Hal R. Ray, Jr.
                                              UNITED STATES MAGISTRATE JUDGE