IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CARLA F. DUNLAP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00238-O-BP |
| | § | |
| CITY OF FORT WORTH, | § | |
| | § | |
| Defendant. | § | |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On July 25, 2019, the United States Magistrate Judge issued Findings, Conclusions, and a Recommendation (the "FCR") in this case. FCR, ECF No. 80. The FCR recommended that the Court grant Defendant the City of Fort Worth's (the "City") Amended Motion for Summary Judgment (ECF No. 64), filed March 13, 2019, and deny as moot the City's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (ECF No. 62), filed March 13, 2019. FCR 1, ECF No. 80. Plaintiff Carla Dunlap ("Dunlap") filed Objections to the Findings, Conclusions, and Recommendations of the United States Magistrate Judge on August 8, 2019. Pl.'s Objections, ECF No. 82.

The Court has conducted a de novo review of the FCR. For the following reasons, Dunlap's Objections are **OVERRULED**, and the Court **ADOPTS** the reasoning in the Magistrate Judge's FCR. Accordingly, the Court **GRANTS** the City's Amended Motion for Summary Judgment and **DENIES as moot** the City's Motion to Dismiss.

**I.   BACKGROUND**

After being fired from her position with the Fort Worth Police Department, *see* Def.'s App. 221, ECF No. 66, Carla Dunlap sued the City, *see generally* Notice of Removal, ECF No. 1. In her Amended Complaint, Dunlap provided details to support her assertion that "[t]he City of Fort Worth

1

committed the following violations concerning the Plaintiff: (1) wrongful termination of her employment; (2) racial discrimination against her; (3) retaliation; (4) pay and promotional discrimination; (5) harassment and bullying in the workplace; (6) defamation of her character; (7) firing her for being late one time in 25 years and not calling; (8) failure to provide reasonable accommodations for her under the Americans With Disabilities Act for two injuries acquired on the job; (9) accusation against her of impeding the identities of arrestees; and (10) firing her for missing a non-mandatory training class that she signed up for on her time off." Pl.'s Am. Compl. 4, ECF No. 53 (cleaned up). Liberally construed, Dunlap's Amended Complaint asserted claims against the City for discrimination on the bases of race, disability, and age; various torts; and violations of Chapter 37 of the Texas Penal Code. *See id.* at. 23–26.

After the close of discovery, the City moved for summary judgment, asserting several reasons why Dunlap's claims under § 1983, Title VII, the ADA, the ADEA, state tort law, and state criminal law all fail as a matter of law. *See generally* Def.'s Br. Supp. Mot. Summ. J., ECF No. 65. The Magistrate Judge agreed with the City's arguments, and he issued a thorough analysis and recommendation that the Court grant the City's Amended Motion for Summary Judgment. FCR, ECF No. 80. Dunlap objected to each of the Magistrate Judge's conclusions. Pl.'s Objections, ECF No. 82. The FCR and Dunlap's Objections are ripe for the Court's review.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

### B. *Pro Se* Standard

Federal courts have a "traditional disposition of leniency toward pro se litigants." *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (emphasis omitted) (internal citation omitted). "Of course, this is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do." *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015). "Additionally, courts have continuously held that ignorance of the law and inadvertent noncompliance, including missed deadlines and defective pleadings, are inexcusable even when the plaintiff is proceeding pro se." *Edwards v. Biotronics Kidney Ctr.*, No. 1:09-CV-348, 2010 WL 27214, at *2 (E.D. Tex. Jan. 5, 2010) (emphasis omitted) (citing *McNeil v. United States*, 508 U.S. 106, 113

(1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Teemac v. Henderson*, 298 F.3d 452, 458 (5th Cir. 2002)).

### III. ANALYSIS OF OBJECTIONS

Though Plaintiff's Objections do not clearly address each issue she takes with the Magistrate Judge's analysis, it appears she intends to object to each conclusion in the FCR. *See generally* Pl.'s Objections, ECF No. 82. Accordingly, the Court addresses each conclusion in the order in which they appear in the FCR. Additionally, Plaintiff raises criminal claims not addressed in the FCR. *See id.* at 16 (addressing claims under 18 U.S.C. §§ 241, 242). Whereas the Court would typically disregard these claims as not preserved, it proceeds as if these claims were those Dunlap "inartfully pleaded" in her Amended Complaint. *Erickson*, 551 U.S. at 94 (internal citation omitted). Thus, though these claims do not change the Court's full agreement with the FCR, the Court addresses them as well.

#### A. 29 U.S.C. § 1983 Claims

Dunlap appears to raise three claims based on alleged constitutional violations occurring at her termination-appeal hearing: (1) a freedom of speech violation based on the City preventing her from asking questions during the hearing; (2) a procedural due process violation also based on the City preventing her from asking questions during the hearing; and (3) a procedural due process violation based on the City preventing her from calling a specific witness. *See* Pl.'s Am. Compl. 3, 9, ECF No. 53. Although Dunlap did not specifically plead these claims under § 1983, "the [Magistrate Judge] liberally construe[d] her claims for alleged violation of due process and infringement of her rights under the First Amendment as premised upon violations of 42 U.S.C. § 1983." FCR 4, ECF No. 80. The City argued and the Magistrate Judge concluded that Dunlap's § 1983 claims fail because (1) they are untimely and (2) the City is not liable for the conduct of its employees. *See* Def.'s Br. Supp. Mot. Summ. J. 4–9, ECF No. 65; FCR 5–6, ECF No. 80. Dunlap objects that her "claims under

section 1983 do not fail as a Matter of Law because she did not file a claim under this statu[te]." Pl.'s Objections 12, ECF No. 82. Instead, she says she filed claims under 42 U.S.C. § 1981, which "will not fail as a Matter of Law because they were not time-barred." *Id.* She also objects that the City does "not enjoy immunity under this section." *Id.* at 16.

Before determining whether these claims are barred by the statute of limitations or governmental immunity, the Court first addresses Dunlap's distinguishing between § 1981 and § 1983. *See id.* at 12. Though she treats them as separate claims, they function here as one and the same. The Supreme Court has held that § 1981 does not provide a cause of action against local government entities separate from that provided in § 1983. *Oden v. Oktibbeha County*, 246 F.3d 458, 462 (5th Cir. 2001) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)). Accordingly, "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Id.* at 463. Thus, if Dunlap meant to raise claims under § 1981, the Magistrate Judge was correct to analyze them under § 1983.

1. Statute of Limitations

"Federal civil rights actions brought under 42 U.S.C. § 1981, which lacks an express statute of limitations, are governed by the most closely analogous limitations period provided under state law." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003). When a § 1981 claim "is brought in Texas, the two-year statute of limitations for personal injury actions in Texas controls." *Id.* "The limitations period for [§] 1981 and [§] 1983 employment discrimination cases commences when the plaintiff knows or reasonably should know that the discriminatory act has occurred, the same point from which the Title VII 180-day limitations period runs." *McWilliams v. Escambia Cty. Sch. Bd.*, 658 F.2d 326, 330 (5th Cir. 1981).

All three alleged civil-rights violations occurred on January 21, 2016, the day of Dunlap's termination-appeal hearing. Thus, the limitation period began running on January 21, 2016, giving

5

Dunlap until January 21, 2018—two years after the hearing—to file her suit. *See* Def.'s App. 288, ECF No. 66 (admitting the date of the January 21, 2016 hearing). Because Dunlap did not file her petition in state court until February 23, 2018, her due process and freedom of speech claims are statutorily barred. Pl.'s Original Pet., ECF No. 1. Thus, Dunlap's objection regarding the timeliness of her constitutional claims is **OVERRULED**.

2. Municipal Liability

"A municipality cannot be held liable under § 1983 on a theory of respondeat superior." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018). Rather, a municipality—such as a city—will only be held liable for § 1983 violations if a plaintiff can establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Dunlap did not plead that a City policymaker enacted an official policy that was the moving force behind the City employees' constitutional violations. And during the discovery period, when asked to "[i]dentify the specific official municipal policy or established custom that allegedly caused [her] constitutional deprivation," Dunlap merely recounted two interactions with specific employees without reference to any City policy. *See* Def.'s App. 301, ECF No. 66. Since Dunlap has not presented any summary judgment evidence to prove the existence of an unconstitutional policy, her objection regarding the City's liability for its employees' alleged constitutional violations is **OVERRULED**.

**B. Title VII Claims**

The majority of Dunlap's Amended Complaint focused on her claim that the City discriminated against her because she is black. Specifically, she stated that several of her white and Hispanic co-workers also committed policy violations but were not fired. *See* Pl.'s Am. Compl. 4–6,

ECF No. 53. She also stated that several of her co-workers made racially charged, derogatory comments that the management knew of but ignored. *See id.* And finally, she stated that City managers denied her promotional opportunities and ultimately fired her based on her race. *See id.* at 24.

Dunlap's claims of race-based discrimination and retaliation sound in Title VII of the Civil Rights Act of 1964.[1] 42 U.S.C. § 2000e–2. The City argued and the Magistrate Judge concluded that Dunlap's Title VII claims (1) are untimely and (2) fail as a matter of law. *See* Def.'s Br. Supp. Mot. Summ. J. 18–23, ECF No. 65; FCR 9–11, ECF No. 80. Dunlap objects to the Magistrate Judge's reliance on the right-to-sue letter following her EEOC complaint, arguing her "November 24, 2015 EEOC complaint does not apply and should be completely dismissed." Pl.'s Objections 14, ECF No. 82. She claims "[t]he September 23, 2016 charge of racial discrimination replaces the case filed in October of 2015." *Id.* And she repeats the facts pleaded to support her racial-discrimination and retaliation claims without citing to any relevant summary-judgment evidence. *See id.* at 14–15.

1. Timeliness

"[B]efore a plaintiff can commence a civil action under Title VII in federal court, she must file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam) (citing 42 U.S.C. § 2000e–5(e)(1)). A plaintiff has sufficiently exhausted her administrative remedies when she has "file[d] a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Upon receiving the right-to-sue notice, the plaintiff has 90 days to file her complaint. 42

---

[1] The Magistrate Judge also construed Dunlap's references to several employees' alleged sexual misconduct as claims for sex discrimination and sexual harassment. *See* FCR 7, ECF No. 80. However, Dunlap did not include either claim in her Amended Complaint's "[s]tated claims for relief," Pl.'s Am. Compl. 23, ECF No. 53, and she clarified in her Objections that "[s]ex discrimination was not an issue[] in the Plaintiff's case unless the Defendant is referring to compensation," Pl.'s Objections 15, ECF No. 82. Since compensation has never been at issue in this case, the Court disregards the Magistrate Judge's analysis regarding both the assumed sex-discrimination and sexual-harassment claims.

7

U.S.C. § 2000e–5(f)(1). The limitations period is strictly construed against *all* litigants—represented and unrepresented alike. *See Taylor*, 296 F.3d at 379.

On November 24, 2015, the EEOC received Dunlap's Charge of Discrimination. Def.'s App. 223, ECF No. 66. On the Charge of Discrimination, Dunlap had marked that she was discriminated based on "RACE" and "RETALIATION." *Id.* After the EEOC denied her claim, she received its Dismissal and Notice of Rights, which informed her that her "lawsuit must be filed WITHIN 90 DAYS of [he]r receipt of this notice; or [he]r right to sue based on this charge will be lost." *Id.* at 224 (emphasis omitted). Dunlap waited until February 23, 2018—well past the end of the 90-day limitations period—to file her lawsuit in state court. Pl.'s Original Pet., ECF No. 1.

When considering the EEOC's right-to-sue notice and the expiration of the 90-day limitations period, it is clear that Dunlap's claims are untimely. However, Dunlap claims that the EEOC's right-to-sue notice does not apply because the "EEOC complaint . . . was filed prior to the Plaintiff going through the City internal administrative Grievance/Termination Appeals processes." Pl.'s Objections 14, ECF No. 82. She further argues that "[t]he September 23, 2016 charge of racial discrimination replaces the case filed in October of 2015." *Id.* But Dunlap offers no summary-judgment evidence in support of these arguments.

The law is clear that a plaintiff has 90 days past the receipt of an EEOC right-to-sue notice to file her Title VII complaint. 42 U.S.C. § 2000e–5(f)(1). Dunlap's pro-se status does not make her an exception to this rule. *See Taylor*, 296 F.3d at 379. Accordingly, Dunlap's objection regarding the timeliness of her Title VII claims is **OVERRULED.**

    2. <u>Merits</u>

        a. *Discrimination on the Basis of Race*

When a plaintiff's Title VII claim relies on circumstantial evidence, it is "subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*." *Harville v. City of Houston*, —

8

F.3d —, 2019 WL 6906099, at *3 (5th Cir. Dec. 19, 2019) (citing 411 U.S. 792 (1973)). Pursuant to the *McDonnell Douglas* standard, the plaintiff "has the initial burden to establish a prima facie case of discrimination." *Id.* The plaintiff must produce evidence that she:

(1) is a member of a protected class,
(2) was qualified for the position that she held,
(3) was subject to an adverse employment action, and
(4) was replaced by someone outside of her protected class or treated less favorably than other similarly-situated employees who were not in her protected class.

*Id.* Once the plaintiff establishes her prima facie case, "the burden then shifts to the [defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant carries that burden, "the burden shifts back to [the plaintiff] to demonstrate that the employer's proffered reason is a pretext for discrimination." *Id.* (internal citation omitted). Ultimately, though, the burden of persuasion "remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Dunlap easily satisfies the first and third elements, as it is undisputed that Dunlap is black and was fired. *See Hassen v. Ruston La. Hosp. Co.*, LLC, 932 F.3d 353, 356 (5th Cir. 2019) ("[Plaintiff] is black, a protected class."); *Feist v. La., Dep't of Justice, Office of Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) ("[D]ismissal constitutes an adverse action."). And Dunlap's responses to the City's interrogatories provide evidence to support the fourth element, as she details accounts of several times she was treated less favorably than her white and Hispanic co-workers. *See, e.g.*, Def.'s App. 277, ECF No. 66. But Dunlap has not produced any summary-judgment evidence that she was qualified for her position as a City employee. Accordingly, Dunlap cannot surpass her first hurdle of satisfying all four *McDonnell Douglas* factors. Thus, Dunlap's objection that she has produced evidence to proceed on her Title VII race-based discrimination claim is **OVERRULED.**

    b. *Retaliation*

"The *McDonnell Douglas* evidentiary framework applies to Title VII retaliation claims

9

brought under a pretext theory." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). "To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff does not present evidence to establish all three elements, "[s]ummary judgment is appropriate." *Id.*

Is it undisputed that the City fired Dunlap, so she satisfies the second element. *See Feist*, 730 F.3d at 454. However, she has not presented summary-judgment evidence to support the first and third elements. Indeed, when the City asked her to identify "the protected activity for which [she] contend[ed] the City retaliated against [her]," Dunlap did not respond to the question. Def.'s App. 276, ECF No. 66. Accordingly, Dunlap cannot establish a prima facie case of retaliation. Thus, Dunlap's objection that she has produced evidence to proceed on her Title VII retaliation discrimination claim is **OVERRULED.**

### C. ADA Claims

Dunlap also claims that the City "failed to provide reasonable accommodations for her under the American[s] With Disabilities Act for two injuries acquired on the job." Pl.'s Am. Compl. 4, ECF No. 53. The City argued and the Magistrate Judge concluded that Dunlap's ADA claims fail because they are (1) not administratively exhausted and (2) untimely. *See* Def.'s Br. Supp. Mot. Summ. J. 9–13, ECF No. 65; FCR 12–13, ECF No. 80. Dunlap objects that her ADA claims "do not fail as a Matter of Law because she filed a timely EEOC complaint." Pl.'s Objections 15, ECF No. 82.

#### 1. Administrative Exhaustion

Just as a plaintiff must exhaust her administrative remedies before filing a Title VII claim in court, she must also exhaust her administrative remedies before filing an ADA claim. *See Dao*, 96 F.3d at 789. "If a plaintiff files a charge with the EEOC, the scope of a subsequent judicial complaint

is limited to the 'scope of the EEOC investigation which can be reasonably expected to grow out of the charge.'" *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 (N.D. Tex. 2011) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

As noted above, Dunlap's charge listed "RACE" and "RETALIATION" as the bases of the City's discrimination. Def.'s App. 223, ECF No. 66. And though there was a box labeled "DISABILITY," Dunlap did not mark it. *Id.* Because an EEOC investigation based on discrimination on the basis of a disability cannot be "reasonably expected to grow out of the charge[s]" of race and retaliation, Dunlap's EEOC Charge of Discrimination did not cover her ADA claims. *Sanchez*, 431 F.2d at 466. Nor has Dunlap presented summary-judgment evidence of any later EEOC Charge of Discrimination including the ADA claims. Accordingly, Dunlap's objection that she administratively exhausted her ADA claims is **OVERRULED.**

2. Timeliness

To administratively exhaust her ADA claims, plaintiff must also abide by the 90-day limitations period after receiving the EEOC's right-to-sue notice. *See* 42 U.S.C. § 12117(a) (incorporating Title VII's "powers, remedies, and procedures" into the ADA); *see also id.* at § 2000e–5(f)(1) (90-day limitations period). For the reasons stated above regarding the untimeliness of Dunlap's Title VII claims, her objection regarding the timeliness of her ADA claims is also **OVERRULED.**

**D. ADEA Claims**

Dunlap also claims that the City "terminated the employee because they knew it would be harder for her to be hired due to being over 40." Pl.'s Am. Compl. 24, ECF No. 53. The City argued and the Magistrate Judge concluded that Dunlap's ADEA claims fail because she failed to administratively exhaust them. *See* Def.'s Br. Supp. Mot. Summ. J. 14–15, ECF No. 65; FCR 14, ECF No. 80. In her Objections, Dunlap does not address whether she administratively exhausted the claims,

11

but she "still asserts that age played a factor in the termination of employment and co-workers whom were much older . . . could remain employed." Pl.'s Objections 15, ECF No. 82.

As was the case regarding Dunlap's ADA claims, her ADEA claims fail due to her failure to administratively exhaust them by including them in her Charge of Discrimination. *See* Def.'s App. 223, ECF No. 65. And again, though there was a box labeled "AGE," Dunlap did not mark it. *See id.* Because an EEOC investigation based on discrimination on the basis of age cannot be "reasonably expected to grow out of the charge[s]" of race and retaliation, Dunlap's EEOC Charge of Discrimination did not cover her ADEA claims. *Sanchez*, 431 F.2d at 466. Accordingly, Dunlap's objection regarding her ADEA claims is **OVERRULED.**

### E. Tort Claims

Dunlap claimed the City committed several violations that the Magistrate Judge liberally construed as negligence, defamation, and invasion of privacy. *See* FCR 14–15, ECF No. 80 (citing Dunlap's Amended Complaint (ECF Nos. 47, 53), which alleged the City "failed to make her aware of the law" regarding her job-related injuries, "ruined [her] reputation internally so that no other supervisor would allow [her] to transfer due to the reprimands," and recorded her phone conversations and posted her photos on the internet without her permission, among other things). The City argued and the Magistrate Judge concluded that Dunlap's various tort claims fail because the City did not waive its relevant tort liability. *See* Def.'s Br. Supp. Mot. Summ. J. 23–25, ECF No. 65; FCR 16, ECF No. 80.

The State—along with its agencies and political subdivisions—generally enjoys immunity from tort claims. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). "Immunity is only waived for claims brought under the TTCA[, the Texas Tort Claims Act]." *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 872 (S.D. Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE §§ 101.001, *et seq.*). The TTCA expressly "prohibits claims for intentional torts." *Id.*

(citing TEX. CIV. PRAC. & REM. CODE § 101.057). Though the TTCA provides a limited waiver of governmental liability for unintentional torts, that waiver generally only applies "to the extent that liability arises from the 'use of a motor-driven vehicle or motor-driven equipment' or from 'a condition or use of tangible property or real property.'" *Garcia*, 253 S.W.3d at 655–56 (quoting TEX. CIV. PRAC. & REM. CODE § 101.121).

Dunlap's intentional-tort claims—defamation and invasion of privacy—are prohibited by the TTCA. *See* TEX. CIV. PRAC. & REM. CODE § 101.057. Though the TTCA does not expressly waive immunity from negligence claims, *cf. Quinn v. Guerrero*, 863 F.3d 353, 361 (5th Cir. 2017), the City is presumed to enjoy governmental immunity, *see Garcia*, 253 S.W.3d at 655. Dunlap argues that the City "do[es] not enjoy immunity" under "section 1981 and all other statutes of unfair and discriminatory employment practices," but she offers no legal justification for a waiver of governmental immunity. Pl.'s Objections 16, ECF No. 82. Accordingly, Dunlap's objection that the City does not enjoy governmental immunity against her tort claims is **OVERRULED.**

### F. Texas Penal Code Claims

Additionally, Dunlap claimed the City violated Chapter 37 of the Texas Penal Code by "[t]ampering with government documents by intentionally falsifying them and making false statements to cause harm by terminating [her] employment." Pl.'s Am. Compl. 26, ECF No. 53. The City argued and the Magistrate Judge concluded that the Texas Penal Code does not give rise to a private right of action. *See* Def.'s Br. Supp. Mot. Summ. J. 25, ECF No. 65; FCR 16–17, ECF No. 80.

"Courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action." *Back v. UTMB*, No. 6:15-CV-129, 2016 WL 9455135, at *2 (W.D. Tex. Apr. 7, 2016). Indeed, "[i]n order for a private right of action to exist under a criminal statute," the Supreme Court requires "'a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Ali v. Shabazz*, 8 F.3d 22, 22 (5th Cir. 1993) (unpublished) (quoting *Cort v. Ash*, 422 U.S.

13

66, 79 (1975)).

Dunlap objects that the City's "[e]mployees were dishonest and deserve to be punished under Texas Code 37.10." Pl.'s Objections 16, ECF No. 82. She states that "[t]he Attorney General has the power to enforce all illegal activities against all employees and the Plaintiff plans to assist him in executing charges against all of them." *Id.* But she does not claim that Congress has given her the right to do so. Accordingly, Dunlap's objection that her Texas Penal Code claims are actionable is **OVERRULED**.

### G. 18 U.S.C. § 241, 242 Claims

Finally, Dunlap objects by arguing that her criminal claims stem from 18 U.S.C. §§ 241 and 242. Pl.'s Objections 5, ECF No. 82. Specifically, she claims the City employees "violated the Protected Class member's rights under 18 U.S.C. 241 and 242 by using employees to conspire against her because she is black and depriving her constitutional rights to Freedom of Speech." *Id.* Because "[s]ections 241 and 242 are criminal statutes that 'do not provide for a private right of action,'" the Court **OVERRULES** this objection. *Chaney v. Races and Aces*, 590 F. App'x 327, 330 (5th Cir. 2014) (per curiam) (quoting *Ali*, 8 F.3d at 22).

## IV. CONCLUSION

Having conducted a de novo review of the FCR and Plaintiff's Objections, the Court **OVERRULES** each of Plaintiff's Objections and **ADOPTS** the reasoning in the Magistrate Judge's FCR. Accordingly, the Court **GRANTS** the City's Amended Motion for Summary Judgment (ECF No. 64) and **DENIES as moot** the City's Motion to Dismiss (ECF No. 62).

**SO ORDERED** on this **8th day of January, 2020.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

14